UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re  5200 ENTERPRISES LIMITED
*Debtor*

Case No. 3:18-bk—01646-JAF

Chapter 11 of the U.S. Code

5200 ENTERPRISES LIMITED
*Plaintiff*

MTAG SERVICES LLC
*Defendant*

CITY OF NEW YORK
*Defendant*

Adv. Proc. No.

_____/

## COMPLAINT

Plaintiff, 5200 ENTERPRISES LIMITED ("5200"), by and through its undersigned counsel, files this Complaint against the CITY OF NEW YORK ("CONY") and MTAG SERVICES LLC ("MTAG") for damages to real property caused by fraud and alleges as follows:

1. This is an adversary proceeding in which the Plaintiff is seeking damages for fraudulently levied taxes by CONY.

2. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §523.

3. This is a core proceeding pursuant to 28 U.S.C. §157(a), (c) and (k).

4. Venue is proper pursuant to 28 U.S.C. §1409(a) and Local Rule 1071-1 of the United States Bankruptcy Court for the Middle District of Florida.

## PROCEDURAL HISTORY

1. On or about May 16, 2018, 5200 filed the underlying Chapter 11 bankruptcy in this action, as above-captioned, (the "Bankruptcy Case"), relating to damages and misapplied taxation of the Property.

2. On or about February 11, 2019, 5200 filed an adversary proceeding in the Middle District of Florida, Adv. Proc. No. 19-000021-JAF, (the "Adversary Proceeding") with two causes of action, continuous trespass and declaratory relief relating to tax reassessment as a result of the continuing trespass.

3. On or about August 12, 2019, the Bankruptcy Court for the Middle District of Florida granted a motion for summary judgment and lifted the automatic stay in the Bankruptcy Case.

4. On or about August 18, 2019, the Bankruptcy Court for the Middle District of Florida granted a motion to dismiss the Adversary Proceeding.

5. On or about October 25, 2019, 5200 filed an appeal, (the "Bankruptcy Appeal"), to the Middle District of Florida. The Bankruptcy Appeal is still currently pending with the Middle District of Florida.

6. On or about December 6, 2019, 5200 filed an appeal, (the "Adversary Appeal"), to the Middle District of Florida. The Adversary Appeal is still currently pending with the Middle District of Florida.

7. After ongoing discovery and document collection related to this action, 5200 has discovered additional information that 5200 did not have until after dismissal of the Adversary Proceeding, (the "Newly Discovered Evidence").

8. 5200 now brings this action based on the Newly Discovered Evidence.

## FACTS

5. On or about December 18, 1986, 5200 acquired 5200 First Avenue, Brooklyn, NY 11232 (the "Property") for the purchase price of $995,000.00 plus closing costs.

6. The Property consisted of a 35,440 square foot industrial building and related land of approximately 24,000 square feet.

7. As of the date of purchase, the Property required normal improvements and repairs, including repair of a damaged roof and truss system, but was otherwise in good condition.

8. In early 1987, CONY entered into negotiations with 5200 to lease the Property.

9. On or about January 13, 1987, CONY sent 5200 a notice to lease the Property. The Letter of Intent is attached as Exhibit A.

10. Prior to formalizing the lease, CONY had its representative conduct an asbestos survey.

11. During the asbestos inspection, this representative learned that the property was previously used as a repair shop for transformers and electrical devices and that it was once contaminated with polychlorinated biphenyls ("PCBs").

12. On or about February 5, 1988, Mr. Sergio Wong, an Industrial Hygienist for CONY, sent a letter to CONY notifying CONY of PCBs on the Property. The Letter is attached as Exhibit B.

13. On or about February 24, 1988, Mr. Ted R. Nabavi for CONY Department of Environmental Protection Bureau of Hazardous Materials Program sent a letter to Ms. Mira Barer to report the finding of the CONY OSHP inspection report that was given to 5200 upon purchase of the property. The Letter is attached as Exhibit C.

14. On or about April 14, 1988, after CONY's inspector discovered the PCBs, CONY reported the presence of PCBs to the State of New York ("SONY"). The Letter is attached as Exhibit D.

15. On or about February 28, 1989, SONY included the Property in the Registry of Inactive Hazardous Waste Disposal Sites (the "Registry") as a Classification 2, which indicated that the Property posed a significant threat to the public health or the environment. The Registry notice is attached as Exhibit E.

16. The placement of the Property on the Registry made the Property unsuitable for leasing and subjected the Property to long, detailed, and expensive environmental investigations and environmental cleanup.

17. Although the presence of PCBs was found on the Property in 1988, no PCBs were discovered under the raised concrete floor slab until pre-demolition characterization sampling.

18. On or about March 7, 1991, Ms. Rosalie Rusinko ("Ms. Rusinko"), Senior Attorney for SONY Department of Environmental Conservation, sent a letter to Mr. Philip Damashek, Deputy General Counsel for CONY, that identified CONY as a responsible party for the PCB contamination of the Property. The Letter is attached as Exhibit F.

19. On or about August 14, 1991, Mr. Anthony Dillof, Assistant Corporation Counsel for CONY, sent a letter to Ms. Rusinko in response to the March 7, 1991 letter that provided a limited history of the Property. The Letter is attached as Exhibit G.

20. On or about December 26, 1996, Ms. Rusinko sent a letter to Mr. David Atik, Tax Counsel for CONY, to identify CONY as joint and severally liable for remedial measures for PCBs at the Property. The Letter is attached as Exhibit H.

21. This sampling uncovered PCBs and friable asbestos containing material ("ACM") debris.

22. On or about October 15, 2014, Mr. David Chiusano, Project Manager for SONY, sent Mr. Steven Camaiore of CONY Environmental Protection a letter stating that the building on the Property would be demolished. The Letter is attached as Exhibit I.

23. The discovery of the additional PCBs and the friable ACM required a variance from the previously approved remediation, abatement, and demolition procedure.

24. The request for a variance was made on July 27, 2015.

25. Although the SONY knew about the newly discovered PCBs and friable ACM in 2015, it never informed 5200 of this newly discovered hazardous material.

26. Although CONY knew, or should have known, that it caused the hazardous material contamination from previous ownership, including the newly discovered PCBs and friable ACM, CONY it refused to take responsibility for the contamination.

27. In fact, CONY never even told 5200 or SONY about the PCB's and friable ACM in the basement.

28. On or about 2016, CONY sent a notice to 5200 that 5200 did not have to file a Real Property Income and Expense ("RPIE"). The Notice is attached as Exhibit J.

29. On or about May 2, 2016, Mr. George Hu of the Brooklyn Assessment Office notified 5200 that CONY assigned him to review taxes for the Property. The Message is attached as Exhibit K.

30. On or about May 1, 2017, 5200 sent a letter to the Brooklyn Business Center stating that SONY has had possession and control of the Property since 1991. The Letter is attached as Exhibit L.

31. On or about December 4, 2017, Ms. Rusinko sent a letter to Dr. Daniel Walsh, Ph. D. Director for CONY in The Mayor's Office of Environmental Remediation to identify history of the Property that would hold CONY responsible for PCBs on the property and to offer settlement negotiations to CONY. The Letter is attached as Exhibit M.

32. On or about March 12, 2018, 5200 sent an email to Ms. Sophia Walkes ("Ms. Walkes"), CONY Department of Finance, in dispute of any taxes on the Property and liability for the PCBs. The Message is attached as Exhibit N.

33. On or about May 2, 2018, Ms. Walkes sent an email to 5200 stating the tax liens sold to MTAG will be defected. The Message is attached as Exhibit O.

34. On or about June 7, 2018, 5200 sent an email to Mr. Carl Laske, Chief Real Property and Legal Counsel for CONY Department of Finance, in dispute of any taxes on the Property and liability for the PCBs. The Message is attached as Exhibit P.

35. During this time, despite CONY's knowledge of the hazardous waste, CONY continued to tax the Property based upon its best intended use as a commercial property.

36. During this time, despite the Property being placed on the Registry due to contamination caused by CONY, the Property was taxed as if it was utilizing its best intended use.

37. Due to the contamination, including the recently discovered contamination, the Property had no real value and until the remediation was completed the Property was a liability and not an asset.

38. The taxes levied by CONY were improper. CONY taxed the Property as if it was capable of being utilized for its best use when CONY knew that the Property was essentially worthless in its contaminated state. The tax assessment should have been predicated on the value of the Property in its then present and contaminated condition.

39. CONY contaminated the Property with hazardous materials, including but not limited to the recently discovered PCBs and friable ACM.

40. Due to the fraudulent taxation of the Property, including but not limited to the recently discovered PCBs and friable ACM, 5200 has been damaged by the Improper Property Taxes levied by CONY, which has taxed the Property at best use despite the fact CONY caused the environmental contamination and refused to tax the Property based upon its then present contaminated condition.

41. CONY sold the fraudulent tax liens to MTAG.

42. CONY and MTAG were aware that the tax liens on the Property were fraudulent and CONY and MTAG worked together to increase the tax liens on the Property.

## COUNT I - FRAUD

43. As its first cause of action, 5200 incorporates paragraphs one (1) through forty-two (42) and further alleges as follows:

44. In the Newly Discovered Evidence, CONY acknowledged that CONY contaminated the Property and therefore CONY was aware and acknowledged that this would limit CONY's ability to apply for EPA grant funding.

45. CONY knew, or should have known, that the Property not only could not have been used for the best intended use, but could not be used at all because, on multiple instances, including in 2007, CONY calculated that the Property had a negative property value. The Property Valuation is attached as Exhibit Q.

46. Under New York City Law, CONY assessors are required to perform field visits on properties every three years and are tasked with updating or making corrections to tax records at that time.

47. New York State Law requires assessors to perform field visits on properties every six years.

48. Additionally, CONY routinely visits vacant land, such as the Property, including visiting the Property in 2007.

49. New York Law requires that contamination must be considered in property tax valuations and the assessment of property value for tax purposes must take into account any factor affecting a property's marketability. When environmental contamination is shown to depress a property's value, the contamination must be considered in property tax assessment.

50. New York's procedure for valuing contaminated property includes: present use of the property, Super-fund site status, extent of contamination, ability to obtain financing, and indemnification in connection with the purchase of the property, potential liability for third parties, estimated cleanup costs, and stigma remaining after cleanup.

51. CONY falsely valued the Property to its best use for property tax assessments even though CONY was aware that the Property could not be use and even calculated that the Property had a negative property value and then CONY sold the tax assessments to a private company owned by CONY, MTAG, in a false statement that the property tax assessments for the Property were valid.

52. CONY falsely stated that the Property was an "Orphan Property", a property with no owner, while CONY was aware that 5200 was in contact concerning the Property, including CONY's discussions with 5200 concerning 5200's desire to lease the Property. The Communications are attached as Composite Exhibit R.

53. CONY has never corrected the above false statements concerning the Property.

54. CONY fraudulently failed to provide property notices or notices of tax assessments to 5200's correct address even though CONY had the correct address for 5200.

55. The fraudulent taxation by CONY on the Property has caused damage to 5200 by levying fraudulent property taxes, penalties and interest thereof, on the Property that could not be used to its best intended purpose, or used at all, for a majority of 5200's ownership.

56. CONY's fraudulent tax liens are documented in the Bankruptcy Case, (the "Fraudulent Tax Liens").

57. CONY intended for the Fraudulent Tax Liens to be accepted because CONY falsely stated that CONY did not create the contamination, that the Property was used, or could be used, to its best intended use, that notices were provided to 5200, and that 5200 was an orphan property.

58. CONY intended to defraud 5200 to increase Fraudulent Tax Liens by falsely stating that that the Property was used, or could be used, to its best intended use, that notices were provided to 5200 and that 5200 was an orphan property in an effort to obtain ownership of the Property from 5200. The Communications are attached as Composite Exhibit S.

59. CONY intended to increase tax assessments on the Property to increase not only the tax debt against 5200 but wait until SONY remedial measures have been completed to regain control of the Property without any remediation expense.

60. The fraudulent taxes assessed on the Property are continuous in nature and therefore are exempt from notice requirements and any such statute of limitations under New York Law.

61. All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred, or have been waived.

WHEREFORE, 5200, respectfully requests this Court enter a judgment in its favor against CONY for obtaining tax liens through fraud and an award of compensatory damages in an amount to be determined by this Court, plus costs, interest, attorney's fees, and other such relief this Court deems just and proper.

## COUNT II – CIVIL CONSPIRACY

62. As its first cause of action, 5200 incorporates paragraphs one (1) through forty-two (42) and further alleges as follows:

63. CONY and MTAG were aware at all times that CONY contaminated the Property with PCBs.

64. CONY and MTAG were aware at all times that the Property could not only not be used to its best intended use, but the Property could not be used by 5200 at all.

65. CONY was aware at all times that CONY would be responsible for the remediation costs at the Property conducted by SONY.

66. CONY conspired with MTAG to fraudulently increase property taxes on the Property in an effort to shield CONY from liability to SONY for remedial measures and obtain the Property from 5200. Communications are attached as Composite Exhibit T.

67. CONY in fact has taxed the Property, and continues to tax the Property, as if the Property is used to the best intended use.

68. CONY has in fact sold these tax liens to a trust controlled by CONY and then MTAG serviced the fraudulent liens for CONY.

69. MTAG has in fact moved to foreclose on the fraudulent tax liens from CONY.

70. As a result of the fraudulent conspiracy of CONY and MTAG, 5200 was harmed by the fraudulent taxes, including penalties and interest thereof, on the Property and the litigation and costs thereof.

71. The fraudulent taxes assessed on the Property are continuous in nature and therefore are exempt from notice requirements and any such statute of limitations under New York Law.

72. All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred, or have been waived.

WHEREFORE, 5200, respectfully requests this Court enter a judgment in its favor against CONY and MTAG for conspiring to obtain tax liens through fraud and an award of compensatory damages in an amount to be determined by this Court, plus costs, interest, attorney's fees, and other such relief this Court deems just and proper.

DATED this Xth day of March 2020.

Respectfully Submitted,

**POSTILLION LAW GROUP, LLC**

/s/ Bryce C. Krampert, Esquire
**Bryce C. Krampert**, **Esquire**
Florida Bar No.: 122508
Bryce@Postillionlaw.com
12724 Gran Bay Parkway West
Suite 410
Jacksonville, Florida 32258
Telephone: (904) 615-6621
Facsimile (888) 399-6710
*Counsel for 5200*