**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Jacksonville Division**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 |
| 5200 ENTERPRISES LIMITED, | Case No.: 3:18-bk-01646-JAF |
| Debtor. | |
| 5200 ENTERPRISES LIMITED, | Adversary Proceeding |
| Plaintiff, | Adv. Pro. No.: 3:20-ap-00038-JAF |
| - against - | |
| CITY OF NEW YORK and MTAG SERVICES, LLC, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF CITY OF NEW YORK'S**
**MOTION TO DISMISS ADVERSARY PROCEEDING**

Dated:  May 21, 2020

**WERNICK LAW PLLC**
Aaron A. Wernick, Esq.
Florida Bar Number: 14059
2255 Glades Road, Suite 324A
Boca Raton, Florida 33431
Telephone: (561) 961-0922
Facsimile: (561) 431-2474
E-mail: awernick@wernicklaw.com
Of Counsel to Furr Cohen, P.A.,
Local counsel for the City of New York

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION ...................................................................................................................1

ARGUMENT

    I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS BARRED BY THE DOCTRINE OF CLAIM PRECLUSION OR *RES JUDICATA* .....................................4

        A.    Standard of Review. ............................................................4

        B.    The Complaint Should Be Dismissed Because the First Cause of Action is Barred by the Doctrine of Claim Preclusion. ..........................................5

    II.    THE CAUSES OF ACTION OF THE COMPLAINT SHOULD BE DISMISSED UNDER BANKRUPTCY RULE 7012(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ...............................................................10

        A.    Standard of Review. ..........................................................10

        B.    The Causes of Action of the Complaint Should Be Dismissed Because the Complaint Fails to Properly Allege Facts Sufficient to Demonstrate that an Action for Fraud Exists. ...................................15

        C.    The Second Cause of Action of the Complaint Should Be Dismissed Because the Complaint Fails to Properly Allege Facts Sufficient to Demonstrate that an Action for Civil Conspiracy Exists. ..........................................21

    III.    THE CAUSES OF ACTION OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE THEY ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS ......................................22

        A.    Standard of Review. ..........................................................22

**Page**

    B.    The Causes of Action of the Complaint Are Barred Because the Statute of Limitations Period on the Debtor's Fraud Claim Expired Well Before the Debtor's Bankruptcy Filing Date ........................................................................................ 24

CONCLUSION .................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**              **Pages**

*1766-68 Assocs., LP v. City of N.Y.*,
    91 A.D.3d 519 (1st Dep't 2012) ................................................................ 15

*Abacus Fed. Sav. Bank v. Lim*,
    75 A.D.3d 472 (1st Dep't 2010) ................................................................ 14

*Acito v. IMCERA Group, Inc.*,
    47 F.3d 47 (2d Cir. 1995) ......................................................................... 11

*Aegis Healthcare, P.A. v. Shared Med. Sys. Corp.*,
    No. 3:99-CV-2697-X, 2000 WL 819409 (N.D. Tex. June 12, 2000) ..................... 26

*Alexander & Alexander of N.Y. v. Fritzen*,
    503 N.E.2d 102 (N.Y. 1986) ..................................................................... 14

*Alhassid v. Bank of Am., N.A.*,
    60 F. Supp. 3d 1302 (S.D. Fla. 2014) ......................................................... 15

*Apace Commc'ns, Ltd. v. Burke*,
    522 F. Supp. 2d 509 (W.D.N.Y. 2007) ........................................................ 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................ 10

*Baloco v. Drummond Co., Inc.*,
    767 F.3d 1229 (11th Cir. 2014) ................................................................... 4

*Bankers Mortg. Co. v. United States*,
    423 F.2d 73 (5th Cir. 1970) ........................................................................ 8

*Beck v. Manufacturers Hanover Trust Co.*,
    820 F.2d 46 (2d Cir. 1987),
    cert. denied, 484 U.S. 1005, 108 S. Ct. 698, 98
    L. Ed. 2d 650 (1988) ........................................................................ 13, 21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................ 10

*Brooks v. Blue Cross and Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) ................................................................. 11

*Matter of Century Glove, Inc.*,
    151 B.R. 327 (Bankr. D. Del. 1993) ........................................................... 15

**Cases**                                                                          **Pages**

*Citibank N.A. v. Data Lease Fin. Corp.*,
   904 F.2d 1498 (11th Cir. 1990) ........................................................................4- 5

*Cordell Consultant, Inc. Money Purchase Plan and Trust v. Abbott*,
   561 F. App'x 882 (11th Cir. 2014) ......................................................................15

*In re Covino*
   241 B.R. 673 (Bankr. D. Idaho 1999) .................................................................8

*Crigger v. Fahnestock & Co., Inc.*,
   443 F.3d 230 (2d Cir. 2006) ........................................................................13, 20

*Crispino v. Greenpoint Mortgage Corp.*,
   2 A.D.3d 478 (2d Dep't 2003) ......................................................................14-15

*Devaney v. Chester*,
   813 F.2d 566 (2d Cir. 1987) ..............................................................................13

*Diggs-White v. City of N.Y.*,
   306 A.D. 2d 371 (2d Dep't 2003) ......................................................................24

*E.E.O.C. v. Port Auth. of N.Y. & N.J.*,
   768 F.3d 247 (2d Cir. 2014) ..............................................................................10

*F.W. Eversley & Co v Finance Administrator of the City of New York*,
   88 Misc. 2d 340 NYS2d 192, 1975 N.Y. Misc. LEXIS 3372
   (N.Y. Sup. Ct. 1975) .........................................................................................19

*Galloway v. N.Y. City Police Dep't*,
   7 A.D.3d 444 (1st Dep't 2004) ..........................................................................24

*In re GNK Enters., Inc.*,
   197 B.R. 444 (Bankr. S.D.N.Y. 1996) ..............................................................25

*Gonzalez v. Crosby*,
   545 U.S. 524 (2005) ...........................................................................................8

*Haskin v. R.J. Reynolds Tobacco Co.*,
   995 F. Supp. 1437 (M.D. Fla. 1998) .................................................................13

*Hoeffner v. Orrick, Herrington & Sutcliffe LLP*,
   85 A.D.3d 457 (1st Dep't 2011) ........................................................................14

*Howard v. Kerzner Int'l Ltd.*,
   12-22184-CIV, 2014 WL 714787 (S.D. Fla. Feb. 24, 2014) .............................12

**Cases**                                                                              **Pages**

*In re Howe Grain, Inc.*,
   176 B.R. 515 (Bankr. D. Neb. 1994) ...................................................................26

*Hoy v. Sandals Resorts Int'l, Ltd.*,
   No. 11-24580-CIV, 2013 WL 6385019 (S.D. Fla. Dec. 6, 2013) ..........................12

*I.A. Durbin, Inc. v. Jefferson Nat. Bank*
   793 F.2d 1541 (11th Cir. 1986) .............................................................................5

*Judge v. Am. Motors Corp.*,
   908 F.2d 1565 (11th Cir. 1990) ........................................................................11-12

*Kajoshaj v. N.Y.C. Dep't of Educ.*,
   543 F. App'x 11 (2d Cir. 2013) .............................................................................10

*Katz Buffalo Realty, Inc. v. Anderson*,
   25 A.D.2d 809 (4th Dep't 1966) .............................................................................7

*Khela v. City of New York*,
   91 A.D.3d 912 (2d Dep't 2012) ............................................................................24

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) .................................................................................11

*McSpedon v. Levine*,
   158 A.D.3d 618 (2d Dep't 2018) ..................................................................9, 14, 21

*Estate of Miller ex rel. Miller v. Thrifty Rent-A-Car Sys., Inc.*,
   609 F. Supp. 2d 1235 (M.D. Fla. 2009) ................................................................12

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993) .................................................................................11

*Modern Settings v. Prudential-Bache Sec.*,
   602 F. Supp. 511 (S.D.N.Y. 1984) ........................................................................13

*Newburger, Loeb & Co., Inc. v. Gross*,
   563 F.2d 1057 (2d Cir. 1977) ...............................................................................15

*No. Brevard Hosp. Dist. v. McKesson Techs., Inc.*,
   No. 6:16-cv-637-Orl-40DCI, 2017 WL 951672 (M.D. Fla. Mar. 10, 2017) ..........23

*O'Brien v. Cnty. of Nassau*,
   164 A.D.3d 684 (2d Dep't 2018) ..........................................................................23

**Cases**                                                                              **Pages**

*Ouaknine v. MacFarlane*,
    897 F.2d 75 (2d Cir. 1990) .......................................................................... 13, 21

*In re Palm Beach Fin. Partners, L.P.*,
    No. 09-36379-BKC-PGH, 2014 WL 12498025
    (Bankr. S.D. Fla. 2014) ................................................................................ 12

*Perez v. Lopez*,
    97 A.D.3d 558 (2d Dep't 2012) .................................................................. 15

*Pierson v New York*,
    56 N.Y.2d 950 (1982) ................................................................................. 24

*Pyles v. United Airlines*,
    79 F.3d 1046 (11th Cir. 1996) .................................................................... 11

*Quiller v. Barclays American/Credit*,
    727 F.2d 1067 (11th Cir. 1984),
    *adhered to en banc.*, 764 F.2d 1400 (11th Cir. 1985),
    *cert. denied*, 476 U.S. 1124 (1986) .......................................................... 11

*Ragsdale v. Rubbermaid, Inc.*,
    193 F.3d 1235 (11th Cir. 1999) ................................................................ 4, 5

*Raimi v. Furlong*,
    702 So.2d 1273 (Fla. App. 3d Dist. 1997) ................................................. 15

*Robinson v. Bd. of Educ.*,
    104 A.D.3d 666 (2d Dep't 2013) ............................................................... 24

*Romano v. Romano*,
    2 A.D.3d 430 (2d Dep't 2003) .................................................................... 14

*Schlaifer Nance & Co. v. Estate of Warhol*,
    119 F.3d 91 (2d Cir. 1997) ........................................................................ 13

*Schlotthauer v. Sanders*,
    153 A.D.2d 731 (2d Dep't 1989) ............................................................... 27

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*,
    403 F.3d 43 (2d Cir. 2005) ........................................................................ 11

*Shekhem'El-Bay v. New York*,
    464 F. Supp. 2d 329 (S.D.N.Y. 2006) ......................................................... 5

**Cases**                                                                   **Pages**

*Stevelman v. Alias Research Inc.*,
    174 F.3d 79 (2d Cir. 1999) ............................................................ 11

*Stires v. Carnival Corp.*,
    234 F. Supp. 2d 1313 (M.D. Fla. 2002) ........................................ 13

*Tejera v. Lincoln Lending Servs., LLC*,
    271 So.3d 97 (Fla. App. 3d Dist. 2019)..................................... 9, 14, 21

*U.S. Bank Nat'l Ass'n v. Gestetner*,
    103 A.D.3d 962 (3d Dep't 2013)..................................................... 14

*In re Watkins*,
    240 B.R. 735 (Bankr. C.D. Ill. 1999) .............................................. 8

*Wexner v. First Manhattan*
    902 F2d 169 (2d Cir. 1990) .................................................... 13, 20-21

*In re Worldwide Web Sys., Inc.*,
    328 F.3d 1291 (11th Cir. 2003) ...................................................... 8

**Statutes**

28 U.S.C. §157 ........................................................................................ 6

28 U.S.C. §1334 ..................................................................................... 6

Bankruptcy Code § 108(a)............................................................... 25, 26

Bankruptcy Code § 505 ................................................................. 2, 6, 27

CPLR 213(8) ......................................................................................... 23

Fed. R. Bankr. P. 7009 ......................................................................... 10

Fed. R. Bankr. P. 7012 ..................................................................... 8, 10

Fed. R. Bankr. P. 7012(b) .................................................................... 10

Fed. R. Bankr. P. 7012(B)(6) ............................................................... 10

Fed. R. Bankr. P. 9024 .................................................................. 1, 7, 8

Fed. R. Civ. P. 9 ................................................................................... 11

Fed. R. Civ. P. 9(b).................................................................... 3, 10, 11

**Statutes**                                                                                          **Pages**

Fed. R. Civ. P. 12(b)(6) ...........................................................................................3, 10

Fed. R. Civ. P. 59(b) ..................................................................................................8

Fed. R. Civ. P. 60 ....................................................................................................1, 8

Fed. R. Civ. P. 60(b) .................................................................................................2, 8

Fed. R. Civ. P. 60(b)(2) ...............................................................................................8

Fla. Stat. §95.11(3)(j) ................................................................................................23

Fla. Stat. §95.031(2)(a) ..............................................................................................23

GML § 50-e .........................................................................................................23, 24

GML § 50-e(5) ..........................................................................................................24

GML § 50-i ...............................................................................................................24

GML § 50-i(1) ......................................................................................................23, 24

NY Civ. Prac. L. § 213(8) ...........................................................................................22

**Other Authorities**

CPLR 217-a
    (Westlaw through L.2019 ch. 758 & L.2020 ch. 1 to 55, 58 to 88) .......................................24

GML § 50-e(1)(a)
    (Westlaw through L.2019 ch. 758 & L.2020 ch. 1 to 55, 58 to 88) .......................................23

Defendant the City of New York (the "**CITY**" or "**Defendant**"), respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Adversary Proceeding (the "**Motion**").

## INTRODUCTION

5200 Enterprises Limited (the "**Debtor**" or "**Plaintiff**") commenced the above-captioned adversary proceeding ("**Adversary Proceeding**") by filing a complaint ("**Complaint**") against the City and MTAG Services, LLC ("**MTAG**"), a servicer for NYCTL 1998-2/MTAG (the "**Trust**"), in the United States Bankruptcy Court for the Middle District of Florida (Jacksonville Division) (the "**Bankruptcy Court**") on March 25, 2020.  The Complaint seeks damages for, *inter alia*, (i) alleged fraudulently levied real property taxes by the City and (ii) MTAG's alleged conspiracy with the City to obtain certain tax liens through fraud.

This Adversary Proceeding was commenced by the Debtor based upon the allegation that the Debtor "discovered additional information" after its prior adversary proceeding against the City of New York (Adv. Pro. No. 19-00021-JAF) ("**Prior Adversary Proceeding**") was dismissed with prejudice.  Complaint ¶7.  By this Adversary Proceeding, the Debtor is seeking to relitigate issues already decided by this Bankruptcy Court in the Prior Adversary Proceeding, and currently on appeal, couched as a new cause of action for fraud, but which is in substance the same claim seeking to invalidate the assessed real property taxes.

Rather than seek relief from the Bankruptcy Court's order dismissing the Prior Adversary Proceeding with prejudice ("**Order Dismissing Prior Proceeding**") pursuant to Rule 60 of the Federal Rules of Civil Procedure ("**Civil Rules**"), made applicable to this Adversary Proceeding by Rule 9024 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), the Debtor seemingly seeks to avoid having to demonstrate that it is entitled to relief by instead commencing a separate action in which its allegations must be assumed as true for purposes of

dismissal on the pleadings. The Bankruptcy Court can, in its discretion, treat this Adversary Proceeding as a motion for relief pursuant to Civil Rule 60(b). Notwithstanding, the Complaint fails on its face and should be dismissed in its entirety.

The Debtor alleges two causes of action in the Complaint. The first cause of action is based upon the City's alleged fraudulent valuation of the Debtor's real property located at 5200 1st Avenue, Brooklyn, New York 11232 (BBL 3-00803-0009) (the "**Property**") and the resulting real property tax liens. The second cause of action is for alleged civil conspiracy by the City and MTAG in furtherance of the alleged fraud by the City. As set forth below, both causes of action should be dismissed because: (i) the claims are barred by the doctrine of claim preclusion (or *res judicata*); (ii) the Complaint fails to allege facts sufficient to demonstrate that an action exists against either the City or MTAG; and (iii) the claims are barred by the applicable statute of limitations.

Based on the Order Dismissing Prior Proceeding, all of the elements to preclude the Debtor from bringing this Adversary Proceeding are present here. Importantly, the Debtor's fraud claim arises out of the same series of transactions as the claims in the Prior Adversary Proceeding, which was ultimately dismissed on the merits. Both the Prior Adversary Proceeding and this Adversary Proceeding essentially argue that the City's tax assessment of the Property is improper because the City allegedly taxed the Property based on a "best use" value and not based on its "as is" condition. The Order Dismissing Prior Proceeding held that the amount of the tax assessment could not be redetermined because the time to contest the assessment had expired under nonbankruptcy law, as set forth in section 505 of the Bankruptcy Code. Because the Debtor's fraud claim is barred by the doctrine of claim preclusion, the Debtor's civil conspiracy also fails, and should be dismissed.

2

The Complaint should also be dismissed because it fails to state a claim for which relief can be granted. First, as set forth in detail below, the Complaint does not state with requisite particularity, as required by Civil Rule 9(b), the claims based upon fraud; i.e., the alleged fraud committed by the City.  Notably, the Complaint does not properly allege facts sufficient to demonstrate that (i) the City knowingly made a material misrepresentation with intent to defraud; (ii) the Debtor reasonably relied upon the alleged misrepresentation; and (iii) the misrepresentation resulted in harm to the Debtor.  Significantly, the Debtor complains of the City's assessment of the value and condition of the Property during the time when the Debtor was the sole owner of the Property.  Because the Debtor's civil conspiracy claim cannot exist independently from the Debtor's fraud claim, dismissal of the fraud claim is fatal to the Debtor's civil conspiracy claim. Accordingly, both causes of action should be dismissed under Civil Rule 12(b)(6) for failure to state a claim.

Further, the second cause of action should be dismissed because the Complaint fails to allege any facts that support a claim for civil conspiracy by the City of New York and MTAG. The Debtor's civil conspiracy claim is based entirely upon a single e-mail communication between a representative of MTAG and counsel for the City Mayor's Office of Environmental Remediation, in addition to the mistaken belief that MTAG is an entity controlled by the City.  The correspondence attached to the Complaint does not come close to demonstrating (i) an agreement between the City and MTAG to defraud the Debtor; and (ii) an overt act taken by each party in furtherance of the alleged fraud, both critical elements to a civil conspiracy claim.  Hence, the civil conspiracy must be dismissed irrespective of whether the Bankruptcy Court dismisses the Debtor's fraud claim.

3

Moreover, the Complaint was commenced many years after the City's allegedly fraudulent valuation occurred and the time when the Debtor knew of the valuation and sought to challenge it.  In addition, if the Debtor's fraud claim against the City is time-barred, the civil conspiracy claim is also statutorily barred.  As such, both of the Debtor's claims are barred by the applicable statute of limitations.

## ARGUMENT

## I.      THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS BARRED BY THE DOCTRINE OF CLAIM PRECLUSION OR *RES JUDICATA*

As set forth below, the relief requested by the Debtor in the Complaint should be denied because the claims are barred by the doctrine of claim preclusion or *res judicata*.

### A.      Standard of Review.

"Federal courts must apply federal common law to determine the preclusive effect of a prior federal court judgment."  *Baloco v. Drummond Co., Inc.*, 767 F.3d 1229, 1246 (11th Cir. 2014) (citation omitted).

In the Eleventh Circuit, claim preclusion applies "if all four of the following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; (4) the same cause of action is involved in both cases."  *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999).

"[D]ismissal of a complaint with prejudice satisfies the requirement that there be a final judgment on the merits."  *Citibank N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990)

In determining whether the cause of action is the same in both cases, courts must compare the substance of the claims, not their form.  *Citibank, N.A. v. Data Lease Fin. Corp.*, 904

4

F.2d at 1503.  If the claims arise out of the same nucleus of operative facts or are based upon the same factual predicate, the claims are the same for purposes of claim preclusion.  *See Id.; see also Shekhem'El-Bay v. New York*, 464 F. Supp. 2d 329, 335 (S.D.N.Y. 2006) ("All claims arising out of the same transaction or series of transactions are barred once a claim is brought to a final conclusion, even if based upon other legal theories or seeking a different remedy").

"Res judicata bars the filing of claims that were raised or could have been raised in an earlier proceeding."  *Ragsdale v. Rubbermaid, Inc.*, *supra*, 193 F.3d @ 1238, citing *Citibank*, 904 F.2d at 1501, citing *I.A. Durbin, Inc. v. Jefferson Nat. Bank* 793 F.2d 1541, 1549 (11th Cir. 1986).  As stated in *Ragsdale*, an issue is could have and should have the claims been brought in the prior lawsuit.  *Ragsdale*, 193 F.3d at 1239.  Therein, the answer was yes, since the nucleus operative facts were the same in each case, and the later claim was barred because "for res judicata purposes, it was in existence at the time the original claim was filed."  *Ragsdale* F.3d @ 1240.

**B.    The Complaint Should Be Dismissed Because the First Cause of Action is Barred by the Doctrine of Claim Preclusion.**

All of the elements of claim preclusion as outlined above are satisfied in this case. First, the Prior Adversary Proceeding was dismissed with prejudice, thereby dismissing the Debtor's claims on the merits.  *See* Wernick Decl. ¶3, Ex. A.[1]

Second, there is no dispute that the Bankruptcy Court was a court of competent jurisdiction over the claims brought by the Debtor in the Prior Adversary Proceeding.  In fact, the Debtor's complaint in the Prior Adversary Proceeding alleges that the Prior Adversary Proceeding fell within the Bankruptcy Court's "core" jurisdiction under 28 U.S.C. §§157, 1334.  Wernick Decl. ¶, Ex. B.

---

[1] "**Wernick Decl.**" refers to the Declaration of Aaron A. Wernick, Esq. dated May 21, 2020 filed in support of the Motion.

Third, the Debtor's fraud claim involves a claim by the Debtor against the City, both of the same parties that were parties to the Prior Adversary Proceeding.  Accordingly, the third element for application of claim preclusion is satisfied.

Finally, the Debtor's fraud claim set forth in the Complaint arises out of the same series of transactions and nucleus of operative facts as the Debtor's claims against the City to challenge the alleged improper Tax Assessments.  As a matter of substance, the claims are virtually identical, albeit brought by the Debtor under a different named cause of action, because they seek the same objective, *i.e.*, to invalidate the Tax Assessments and the underlying Tax Liens.  The mere fact that the Debtor disguised its most recent challenge of the Tax Assessments as a "fraud" claim should not entitle the Debtor the benefit of circumventing the preclusive effect of dismissal of the Prior Adversary Proceeding with prejudice.

In the complaint initiating the Prior Adversary Proceeding (the "**Prior Complaint**" 3:19-ap-0021, Doc. No. 5), the Debtor alleged that the City taxed the Property at "best use" and "refused to tax the Property in its then present contaminated condition" (Prior Complaint Par. 47k) and that the City "has denied that it has improperly taxed the Property in accordance with its best use, instead of taxing the Property in the as-is condition…" (Prior Complaint Par. 50).  The substance of the alleged claim is the same in both proceedings. The Order Dismissing Prior Proceeding correctly held that the Debtor's time within which to contest the tax assessments had expired, and thus the assessments could not be redetermined in bankruptcy under Bankruptcy Code section 505.

The Debtor has known for many years that the Property was contaminated and has been on the New York State Registry of Inactive Hazardous Waste Sites (the "State Registry"),

and thus if it believed the tax assessments were improper it could have contested the assessments, but failed to, regardless of the alleged source of the contamination.[2]

The Debtor indeed claimed in each adversary proceeding that the City is the party that notified the State of New York of the presence of PCBs at the Property in the 1980s. Thus the main thing the Debtor complains of- improper assessments because the Property was contaminated - has been a fact which the Debtor has been allegedly aware of since the time the Debtor became the owner of the Property, or, with respect to the Property being placed on the State Registry, shortly thereafter.  The City did not sell the Property to the Debtor and the City did not make any representations to the Debtor as to the Property's condition; in fact, no such representations are cited in the Complaint.  Nevertheless, and despite the fact that the alleged source of contamination (i.e., who contaminated the Property) would not be relevant to the determination of tax assessments, the Debtor alleged that the City was responsible for contamination in each action, and therefore, to extent the Debtor believed the fraud claim arose therefrom, such claim could have and should have been brought in the Prior Adversary Proceeding, since each adversary proceeding is based on the same operative set of facts alleged by the Debtor.

To the extent that the Debtor alleges that the Complaint is based upon "newly discovered evidence" after dismissal of the Prior Adversary Proceeding with prejudice, the Debtor's appropriate remedy was to file a motion pursuant to Bankruptcy Rule 9024, which incorporates Civil Rule 60, to seek relief from the Order Dismissing Prior Proceeding under certain circumstances, including allegations of fraud and newly discovered evidence, rather than

---

[2] Further, it is well-established that an Article 7 proceeding is in the nature of a *de novo* trial of the correctness of the real property tax assessment, and thus it is irrelevant what the assessor knew about the condition of the Property.  *Katz Buffalo Realty, Inc. v. Anderson*, 25 A.D.2d 809, 809-10 (4th Dep't 1966)(determination of value is customarily based on expert testimony; thus it is irrelevant what the assessor did or failed to do).

commencing this Adversary Proceeding.  *See* Fed. R. Bankr. P. 9024 (providing generally that Civil Rule 60 "applies in cases under the [Bankruptcy] Code"); *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005) ("Rule 60(b) allows a party to seek relief from a final judgment . . . under a limited set of circumstances, including fraud, mistake, and newly discovered evidence").

In order to gain relief from a judgment or order upon newly discovered evidence, the proponent must demonstrate that the evidence (1) was in existence at the time of trial but was not discovered until later; (2) could not have been discovered by due diligence; (3) is not merely cumulative or impeaching; (4) is material; and (5) would probably produce a new result at trial. *In re Watkins*, 240 B.R. 735 (Bankr. C.D. Ill. 1999). *Accord In re Covino* 241 B.R. 673 (Bankr. D. Idaho 1999).

However, by commencing this Adversary Proceeding, the Debtor seeks to obtain the benefit of having its factual allegations accepted as true for purposes of a motion to dismiss pursuant to Bankruptcy Rule 7012, rather than carrying its burden of proof in demonstrating proper grounds for relief from the Order Dismissing Prior Proceeding, including, without limitation, that such "newly discovered evidence" could not have been obtained and discovered with "reasonable diligence" in time to seek review under Civil Rule 59(b).  *See In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1298-99 (11th Cir. 2003) (holding that party seeking relief from judgment bears burden of proof); Fed. R. Civ. P. 60(b)(2).[3]

In fact, much of the evidence was clearly already available to the Debtor.  Most of the claims proffered by the Debtor in the Complaint merely reiterate claims made in the Prior

---

[3] As a general matter, the Bankruptcy Court may, in its discretion, treat this new Adversary Proceeding as a motion for relief pursuant to Civil Rule 60(b).  *See Bankers Mortg. Co. v. United States*, 423 F.2d 73, 77 n.7 (5th Cir. 1970) ("Where the adverse party is not prejudiced an independent action for relief may be treated as a 60(b) motion").  If the Bankruptcy Court decides to exercise such discretion, the City reserves the right to further supplement or amend the Motion accordingly.

Adversary Proceeding, which were unavailing, and further, none of the new evidence adduced, even if it had been diligently obtained, is material or would change the results.

None of the exhibits represent any newly discovered representations made by the City to the Debtor, much less made with fraudulent intent or expectation of detrimental reliance. Any exhibits of alleged communications between the City and Debtor were all clearly available to the Debtor before the Prior Adversary proceeding was dismissed or even commenced.[4] Notwithstanding, because the Debtor's fraud claim against the City of New York is barred by the doctrine of claim preclusion as set forth above, the Debtor's second cause of action against MTAG and the City for civil conspiracy cannot survive independently, and also should be dismissed. *See Tejera v. Lincoln Lending Servs., LLC*, 271 So.3d 97, 103 (Fla. App. 3d Dist. 2019); *McSpedon v. Levine*, 158 A.D.3d 618, 621 (2d Dep't 2018). As such, the causes of action of the Complaint are barred in their entirety, and the Complaint should be dismissed.

---

[4] Exhibit A is a letter from January 1987 describing the City's interest into entering into a proposed lease with the Debtor for the Property. This was also referenced in the Prior Complaint and is not new evidence. The Complaint states that the City sent notice to the Debtor that the Debtor did not have to file a Real Property Income and Expense Report ("RPIE") in 2016, and annexes the alleged notice as Exhibit "J". Complaint Par. 28. Exhibit J actually appears to be a screen shot from the City's Department of Finance ("DOF") web site which says the Debtor didn't have to file an RPIE but it could. The relevance isn't explained, and this notice was also in the Debtor's possession before the Prior Adversary Proceeding. Exhibit K is merely an email to Debtor's principal from May 2017 that the case as to the Property has been assigned to the Brooklyn Assessment office. Exhibit L is a letter from the Debtor to the "Brooklyn Business Center" and is not a representation by the City and also was in Debtor's possession before commencement of the Prior Adversary Proceeding. Likewise, Exhibits N, O and P appear to be e-mail communications between the Debtor's principal and DOF personnel, dated between March and June of 2018, prior to the Prior Adversary Proceeding being commenced. All of the foregoing exhibits were available to the Debtor prior to the Prior Adversary Proceeding being commenced.

II.    **THE CAUSES OF ACTION OF THE COMPLAINT SHOULD BE DISMISSED UNDER BANKRUPTCY RULE 7012(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

As set forth below, both of the causes of action of the Complaint lack sufficient factual bases to survive a motion to dismiss under Bankruptcy Rule 7012(b).[5]

A.    **Standard of Review.**

To survive a motion to dismiss, a complaint must plead facts that are more than "merely consistent with a defendant's liability." *Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F. App'x 11, 13 (2d Cir. 2013) (internal quotation marks and citation omitted). Rather, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014).

A claim is facially plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice as adequate. *Twombly*, 550 U.S. at 555. Therefore, on a motion to dismiss, the Court should disregard legal conclusions and determine whether the complaint has alleged sufficient facts to constitute a "plausible claim" for relief. *See Ashcroft*, 556 U.S. at 678-79.

Further, plaintiffs alleging actual fraud must satisfy the heightened federal pleading standards for allegations for fraud. *See* Fed. R. Civ. P. 9(b) ("[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ."); Fed. R. Bankr. P. 7009 ("Rule

---

[5] Bankruptcy Rule 7012(b) incorporates Civil Rule 12(b)(6). *See* Fed. R. Bankr. P. 7012.

9 F. R. Civ. P. applies in adversary proceedings").  Thus, plaintiffs alleging fraud "must not only plead the elements of the relevant claim under [applicable] law, but they must also meet the pleading requirements of [Civil Rule 9(b)]."  *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509, 514 (W.D.N.Y. 2007).  The burden of proving actual fraudulent intent is on the party alleging fraud.  *See, e.g.*, *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) (with respect to fraudulent transfers).

In order to comply with the requirements of Civil Rule 9(b), the complaint must, with particularity, "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995).  Additionally, the complaint must identify with particularity the content of the statements alleged to be fraudulent and how they misled the plaintiff, and how the defendant benefitted from the fraud.  *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

Dismissal should be granted if a complaint lacks an allegation regarding an element necessary to obtain relief.  *Pyles v. United Airlines*, 79 F.3d 1046, 1049 (11th Cir. 1996); *Quiller v. Barclays American/Credit*, 727 F.2d 1067, 1069 (11th Cir. 1984), *adhered to en banc.*, 764 F.2d 1400 (11th Cir. 1985), *cert. denied*, 476 U.S. 1124 (1986).

As to the choice of law issue, Florida choice of law rules generally require the Bankruptcy Court "to determine which sovereign has the 'most significant relationship' to a particular issue," examining the facts and circumstances present in the case. *Judge v. Am. Motors*

11

*Corp.*, 908 F.2d 1565, 1568 (11th Cir. 1990) (citations omitted); *see also In re Palm Beach Fin. Partners, L.P.*, No. 09-36379-BKC-PGH, 2014 WL 12498025, at *5 (Bankr. S.D. Fla. 2014) (citing numerous cases).

However, before the Bankruptcy Court begins this "significant relationship" analysis, the Bankruptcy Court should "determine whether a conflict of laws truly exists." *Estate of Miller ex rel. Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F. Supp. 2d 1235, 1244 (M.D. Fla. 2009) (citations omitted); *see also Howard v. Kerzner Int'l Ltd.*, 12-22184-CIV, 2014 WL 714787, at *1 (S.D. Fla. Feb. 24, 2014) ("The Court need only make a choice-of-law determination where a given case involves a 'true conflict,' which is present when 'two or more states have a legitimate interest in a particular set of facts in litigation and the law of those states differ or would produce a different result'"); *Hoy v. Sandals Resorts Int'l, Ltd.*, No. 11-24580-CIV, 2013 WL 6385019, at *3 (S.D. Fla. Dec. 6, 2013) (holding that "[a] court need only undertake a complete choice of law analysis if a true conflict exists").

Accordingly, a choice of law conflict exists only if all of the following factors are satisfied: (i) New York and Florida state law applicable to the Debtor's claims are different; (ii) applying New York and Florida state law would produce a different result; and (iii) the policy of one state would be furthered by application of its law while the policy of the other state would not. *Howard v. Kerzner Int'l Ltd.*, 2014 WL 714787, at *1. Here, no conflict exists because, at a minimum, (i) New York law and Florida law are substantially similar; and (ii) applying New York law and Florida law to the facts and circumstances of this case lead to the same result.

"Under New York law, the five elements of a fraud claim must be shown by clear and convincing evidence: (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) and intent to defraud; (4) reasonable reliance on the

12

part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997).

Under Florida law, "[t]he elements for actionable fraud are (1) a false statement containing a material fact; (2) knowledge by the person making the statement that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation." *Stires v. Carnival Corp.*, 234 F. Supp. 2d 1313, 1320 (M.D. Fla. 2002) (citations omitted); *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998). "A plaintiff cannot close his eyes to an obvious fraud, and cannot demonstrate reasonable reliance without making inquiry and investigation if he has the ability, through ordinary intelligence, to ferret out the reliability or truth about an investment." *Crigger v. Fahnestock & Co., Inc.*, 443 F.3d at 234.

"Although scienter need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Wexner v. First Manhattan* 902 F2d 169 (2d Cir. 1990), citing *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987), cert. denied, 484 U.S. 1005, 108 S. Ct. 698, 98 L. Ed. 2d 650 (1988); see *Ouaknine v. MacFarlane*, 897 F.2d 75, 79-80 (2d Cir. 1990).

Even where pleading is permitted on information and belief if facts are peculiarly within the other parties' possession, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations; a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard. *Wexner*, 902 F.2d 169. *Cf. Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987); *Modern Settings v. Prudential-Bache Sec.*, 602 F. Supp. 511, 514 (S.D.N.Y. 1984).

13

As to the allegation of civil conspiracy, it is well-settled that "New York does not recognize an independent cause of action for conspiracy to commit a civil tort." *Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 474 (1st Dep't 2010) (citing *Romano v. Romano*, 2 A.D.3d 430 (2d Dep't 2003)); *see also U.S. Bank Nat'l Ass'n v. Gestetner*, 103 A.D.3d 962, 963 n.2 (3d Dep't 2013) (holding, under New York law, that "no independent cause of action is recognized for civil conspiracy to commit a fraud"). In fact, "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort." *Alexander & Alexander of N.Y. v. Fritzen*, 503 N.E.2d 102, 103 (N.Y. 1986) (citations omitted).

Similarly, "[t]here is no freestanding cause of action in Florida for 'civil conspiracy.'" *Tejera v. Lincoln Lending Servs., LLC*, 271 So.3d 97, 103 (Fla. App. 3d Dist. 2019). "In order to state a claim for civil conspiracy, a plaintiff must allege an underlying independent tort." *Id.*

"While a plaintiff may allege, in a claim of fraud or other tort, that parties conspired, the conspiracy to commit a fraud or tort is not, of itself, a cause of action." *Hoeffner v. Orrick, Herrington & Sutcliffe LLP*, 85 A.D.3d 457, 458 (1st Dep't 2011) (citations omitted). "Given that civil conspiracy is not an independent tort, it cannot have its own independent measure of damages; any damages attributable to plaintiff's conspiracy claim exists only *within* those damages that may be assessed for fraud." *Id.* (emphasis in original).

Therefore, if the first cause of action of the Complaint is dismissed, the second cause of action cannot survive dismissal either. *McSpedon v. Levine*, 158 A.D.3d 618, 621 (2d Dep't 2018) ("Here, since the underlying tort of fraud was properly dismissed, the cause of action alleging conspiracy to commit fraud was also properly dismissed, since it stands or falls with the underlying tort") (citations omitted); *see also Crispino v. Greenpoint Mortgage Corp.*, 2 A.D.3d

478 (2d Dep't 2003) (dismissing civil conspiracy to commit fraud claim where plaintiff could not demonstrate damages suffered as result of fraud claim).

In New York, "[i]n order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." *Perez v. Lopez*, 97 A.D.3d 558, 560 (2d Dep't 2012) (citing *1766-68 Assocs., LP v. City of N.Y.*, 91 A.D.3d 519 (1st Dep't 2012)). The plaintiff must also demonstrate that the conspirators acted with malice and an intent both to participate in the alleged conspiracy and to cause harm to the plaintiff. *See Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1074 (2d Cir. 1977); *Matter of Century Glove, Inc.*, 151 B.R. 327, 338 (Bankr. D. Del. 1993) (analyzing New York law).

Under Florida law, the elements of a civil conspiracy claim are as follows: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Cordell Consultant, Inc. Money Purchase Plan and Trust v. Abbott*, 561 F. App'x 882, 886 (11th Cir. 2014) (quoting *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. App. 3d Dist. 1997)); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014).

**B.    The Causes of Action of the Complaint Should Be Dismissed Because the Complaint Fails to Properly Allege Facts Sufficient to Demonstrate that an Action for Fraud Exists.**

The Debtor's first cause of action for actual fraud is fatally deficient because the Complaint does not plead with requisite particularity the alleged fraud committed by the City of New York. Specifically, the Complaint does not set forth a factual basis for any of the elements of fraud under New York law, including: (i) that a material misrepresentation or omission was made by the City of New York; (ii) that the City of New York made a material misrepresentation

or omission with knowledge of its falsity; (iii) that the City of New York made the misrepresentation or omission with fraudulent intent; (iv) that the Debtor reasonably relied upon the misrepresentation or omission; and (v) that the Debtor was damaged by the misrepresentation or omission.

First, the Complaint does not state with particularity the alleged material misrepresentation or omission made by the City of New York.  The gravamen of the Debtor's fraud claim is that the City of New York improperly assessed taxes against the Property based upon an improper valuation, thereby resulting in "fraudulent tax liens."  Complaint ¶¶38, 40, 51, 55-59.  The Complaint purports to identify four alleged fraudulent statements by the City of New York: (i) that "the Property was used, or could be used, to its best intended use" (Complaint ¶58); (ii) that "the Property is an 'Orphan Property'" (Complaint ¶52); (iii) "that notices were provided to" the Debtor, despite the notices being allegedly sent to the incorrect address (Complaint ¶¶54, 58); and (iv) that the City of New York "did not create the contamination" (Complaint ¶57).

With respect to the allegation that the City fraudulently valued the Property, this Court determined in connection with the Prior Adversary Proceeding that the alleged "improper" assessments were made by the City of New York dating back to 1986, *i.e.*, the year that the Debtor purchased the Property.  Wernick Decl. ¶3, Ex. A.  The Debtor claims that the City of New York "falsely valued the Property;" however, as this Court has already decided, there is a specific procedure for challenging the Tax Assessments.  *Id.* ¶3, Ex. A; *see infra* Section I.B.  If the Debtor felt that the City of New York's assessed value was improper, the Debtor should have utilized the proper channels for seeking a timely review of the Tax Assessments.  *See infra* Section I.B.

Further, even if one assumes that the City's assessor was aware of contamination but didn't factor it into his assessment, the Debtor is not required to rely on such assessment and

has the opportunity to contest the assessment.  The Order Dismissing Prior Proceeding specifically held that the Debtor had abandoned an Article 7 petition contesting the Property's assessment for the 1993/94 tax year (and the Debtor also stipulated to discontinuance of an Article 7 proceeding contesting the 1990/91 tax assessment).  See Wernick Dec. ¶3 and 5, Exs A and C. The Debtor was well aware of its right to challenge the City's assessments.  Therefore, even assuming all of the allegations of the Complaint are true, the Debtor did not adequately plead a fraud claim against the City of New York because there was no reliance by the Debtor, let alone reasonable reliance.

With respect to the allegation that the City fraudulent stated that the Property is an "Orphan Property", the Complaint fails to allege that: (i) the statement was made to the Debtor; (ii) the Debtor reasonably relied upon the statement; and (iii) the Debtor suffered damages as a result of the statement.  Moreover, the Complaint fails to explain how the statement is allegedly fraudulent.  The Debtor claims that "orphan property" means that the Property doesn't have an owner.  See Complaint par 52.  The Complaint references composite Exhibit R to the Complaint in support of this statement.

However, composite Exhibit R begins with a letter dated February 17, 2015 from the New York State Department of Environmental Conservation ("State DEC") to the City's Department of Environmental Preservation saying it was the DEC's belief that the Property was an orphan property, that it had been abandoned since 1988, and that it did not have an owner, and further that the State DEC intended to remediate contamination at the "orphaned property".  This is not a representation by the City, but by the State.

Composite Exhibit R continues with a letter from a representative of the City Mayor's Office of Environmental Remediation (the "OER Letter") to a third-party requesting support for the proposition in the State DEC's letter that the Property is orphaned.  While undated,

it appears to be in response to e-mails from the third party in May of 2015.   The OER letter does not say that the Property is without an owner.  In general, it states that ACRIS (the web-site for the City Register where mortgages, deeds and certain property records are recorded) indicates that the last owner was indeed the Debtor, which acquired title in 1987; that the Debtor had failed to pay taxes for many years; that the tax liens were sold; that the Property lacked a roof; and that no owner was willing to take responsibility. Therefore, demolition and remediation by the State DEC offered the best plan for managing this derelict property.  The Debtor acknowledged that it didn't pay taxes; it just believes the taxes are fraudulent.  Its own Complaint says the roof and truss system was damaged when it acquired the Property in 1987. Complaint Par 7.

Irrespective, the OER letter is not a fraudulent representation made to the Debtor with intent that the Debtor rely on it to its detriment.  Presumably, the Debtor is aware it owns the Property.

With respect to the allegation that the City did not provide notices of the Tax Assessments to the Debtor's proper address, the Complaint fails to properly allege: (i) the fraudulent misrepresentation or omission made by the City; (ii) the City's knowledge of its falsity; (iii) the City's intent to defraud; (iii) the reasonable reliance of the Debtor; and (v) the harm caused to the Debtor.  In fact, the mailing of the notices of the Tax Assessments cannot be considered a fraudulent statement at all.  Moreover, there is no allegation as to where the notices were allegedly sent nor what address the notices should have purportedly been sent to.

In any event, parties are responsible for knowing their taxes, even if they don't receive a bill.  See *F.W. Eversley & Co v Finance Administrator of the City of New York*, 88 Misc. 2d 340, 388 NYS2d 192, 1975 N.Y. Misc. LEXIS 3372 (N.Y. Sup. Ct. 1975).  The Property's

Notice of Property Value ("NOPV") for each year since 2010 is online at DOF's website and has been addressed to the Debtor's address in Jacksonville, Florida each year since the 2015 NOPV.[6]

Finally, with respect to the allegation that the City fraudulently stated that it did not create the contamination, the Complaint does not allege: (i) to whom the statement was made; (ii) the City's knowledge of its falsity; (iii) the City's intent to defraud; (iv) how the Debtor reasonably relied on the statement; and (v) the harm caused to the Debtor from the statement.  Moreover, the Complaint does not adequately explain how the statement is fraudulent.  In addition, the Debtor previously brought a claim against the City of New York in the Prior Adversary Proceeding for damages caused by the City of New York's alleged responsibility for contamination of the Property, and the Bankruptcy Court dismissed the Debtor's claim with prejudice.  Wernick Decl. ¶3, Ex. A.

Generally, with respect to the alleged fraudulent statements, the Complaint does not set forth sufficient particularity regarding the City of New York's alleged informational advantage over the Debtor and how the City expected the Debtor to rely upon the alleged fraudulent statements.

The Debtor annexes Exhibit Q to the Complaint, a document dated March 18, 2007, apparently to show that the City was aware the Property was contaminated and worthless.  It is not clear on its face who prepared the document, but it apparently shows various recovery scenarios in the event of foreclosure of the Property.  This is hardly an appraisal, and Property can be valued in different contexts. Irrespective, the Debtor was aware the Property was contaminated and cannot complain that it somehow detrimentally relied on this document; moreover, the document does not reflect a statement made to the Debtor.

---

[6] https://a836-pts-access.nyc.gov/care/datalets/datalet.aspx?mode=nopv&sIndex=0&idx=1&LMparent=20

Ironically, the Complaint implies that the City of New York, specifically the City DOF, had a better understanding as to the condition of the Property than the Debtor did **during the entire time that the Debtor owned it**.  Noticeably absent, however, is any allegation in the Complaint that can support the conclusion that either: (i) the City (as tax assessor) had a duty to disclose the condition of the Property to the Debtor (as owner); or (ii) the Debtor was reasonable in relying upon the City's stated assessment value of the Property without making any further inquiry.  The Debtor's failure to support either conclusion is fatal to the success of the Debtor's fraud claim.  *See Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234.

Moreover, the Debtor's allegation that the City failed to provide proper notices of the Tax Assessments (Complaint ¶54) is belied by the Bankruptcy Court's findings in connection with the Prior Adversary Proceeding and the Trust's motion for summary judgment filed in the Debtor's main bankruptcy case (Case No. 18-01646-JAF) ("**Main Case**") that the Debtor had sought to contest Tax Assessments.[7]

Finally, there is no allegation in the Complaint that demonstrates that the City of New York acted with fraudulent intent.  Plaintiffs are required to plead the factual basis which gives rise to a "strong inference" of fraudulent intent." *Wexner v. First Manhattan* 902 F2d 169 (2d Cir. 1990), citing *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987), cert. denied, 484 U.S. 1005, 108 S. Ct. 698, 98 L. Ed. 2d 650 (1988); see *Ouaknine v. MacFarlane*, 897 F.2d 75, 79-80 (2d Cir. 1990).

---

[7] The Order Dismissing Prior Adversary Proceeding relied on the decision in the Summary Judgment Motion in the main case and the papers filed in support thereof to the effect that the Debtor had contested the taxes for 1993.  As pointed out in the Shull Declaration in support of the City's motion to dismiss the prior adversary proceeding, the Debtor had also commenced an Article 7 proceeding to contest the Property's tax assessment for the 1990/91 tax year. However, the Debtor stipulated to a discontinuance of that Article 7 proceeding.

Because the Complaint fails to properly state a claim for fraud by the City, the Debtor's civil conspiracy claim cannot stand on its own, and also must fail, thereby leading to dismissal of this adversary proceeding. *See Tejera v. Lincoln Lending Servs., LLC*, 271 So.3d 97, 103 (Fla. App. 3d Dist. 2019); *McSpedon v. Levine*, 158 A.D.3d 618, 621 (2d Dep't 2018).

Accordingly, both causes of action of the Complaint should be dismissed.

**C.    The Second Cause of Action of the Complaint Should Be Dismissed Because the Complaint Fails to Properly Allege Facts Sufficient to Demonstrate that an Action for Civil Conspiracy Exists.**

Even if the Bankruptcy Court determines that the Debtor has pled with requisite particularity an actual fraud claim against the City, the Complaint is woefully deficient of facts necessary to support a claim for civil conspiracy against MTAG and the City.

The Complaint is facially deficient because the Debtor does not adequately allege: (i) that MTAG and the City entered into an agreement to defraud the Debtor, and (ii) that there was an overt act MTAG took in furtherance of the alleged fraud by the City. This is not merely a pleading defect; rather, the facts supporting the Debtor's claim do not exist.

Consequently, the Debtor merely asserts the unsupported conclusion that the "[City of New York] conspired with MTAG to fraudulently increase property taxes on the Property in an effort to shield [the City of New York] from liability to [the State of New York] for remedial measures and obtain the Property from 5200." Complaint ¶66.

The Debtor's entire claim that MTAG conspired with the City is based solely upon (i) a single communication between a representative of MTAG and counsel for the City's OER, attached to the Complaint as Exhibit T; and (ii) the mistaken belief that MTAG is an entity controlled by the City.

The details of the communication between MTAG and counsel for the City's OER involve a discussion regarding the state court tax lien foreclosure action commenced by the Trust

21

with respect to the Property, and the State of New York's insistence that the Trust forbear from proceeding with a foreclosure sale of the Property over public policy concerns. No segment of the discussion can remotely support a claim of conspiracy between the MTAG and the City. The entirety of the cause of action is based upon wholly unsupported speculation.

Further, contrary to the Debtor's allegation, as determined previously in connection with the Summary Judgment Motion in the Main Case, MTAG, the City, and the Trust are distinct legal entities.[8] The Complaint does not contain a single shred of evidence to the contrary.

## III. THE CAUSES OF ACTION OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE THEY ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

As set forth below, the relief requested by the Debtor in both causes of action of the Complaint should be denied because the claims are barred by the applicable statute of limitations.

### A.    Standard of Review.

Section 213(8) of the New York Civil Practice Law and Rules ("**NY CPLR**") provides that actions based upon fraud must be commenced within the "greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. 213(8).

"In Florida, causes of action based on fraud are subject to a four-year statute of limitations." *No. Brevard Hosp. Dist. v. McKesson Techs., Inc.*, No. 6:16-cv-637-Orl-40DCI, 2017 WL 951672, at *4 (M.D. Fla. Mar. 10, 2017) (citing Fla. Stat. §95.11(3)(j)). The statute of

---

[8] The Debtor's repeated confusion regarding the relationship between MTAG, the Trust, and the City is incomprehensible. MTAG is a servicer for the Trust. In any event, these allegations do not give rise to a finding of a conspiracy. The City taxed the Property and sold tax liens to the Trust, and the Trust holds a foreclosure judgment.

limitations period begins to run by the earlier of "the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence" or "12 years after the date of commission of the fraud." Fla. Stat. §95.031(2)(a).

With respect to claims against municipalities, New York State General Municipal Law ("**GML**") § 50-i(1) provides that,

> [n]o action or special proceeding shall be prosecuted or maintained against a [municipality] for [tort claims], unless (a) a notice of claim shall have been made and served upon the [municipality] in compliance with [GML § 50-e], (b) it shall appear by and as an allegation in the complaint that at least thirty days have elapsed since the service of such notice . . . and that adjustment or payment thereof has been neglected or refused, and (c) the action or special proceeding shall have been commenced within one year and ninety days after the happening of the event upon which the claim is based.

N.Y. Gen. Mun. Law § 50-i(1) (Westlaw through L.2019 ch. 758 & L.2020 ch. 1 to 55, 58 to 88).

This notice requirement applies to fraud claims against municipalities. *See O'Brien v. Cnty. of Nassau*, 164 A.D.3d 684, 687 (2d Dep't 2018).

Pursuant to GML § 50-e(1)(a), in "any case founded upon a tort where a notice of claim is required by law as a condition precedent to the commencement of an action . . . the notice of claim shall . . . be served . . . within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50-e(1)(a) (Westlaw through L.2019 ch. 758 & L.2020 ch. 1 to 55, 58 to 88). Failure to comply with the notice of claim requirements mandates dismissal of the action. *See Khela v. City of New York*, 91 A.D.3d 912 (2d Dep't 2012) (service of a notice of claim is a condition precedent to suit and failure to serve notice of claim on City or Comptroller mandates dismissal of action).

GML § 50-e(5) provides that a court is without discretion to grant leave to serve a late notice of claim after the expiration of the limitations period. *See also Pierson v New York*, 56 N.Y.2d 950, 956 (1982) (holding that "the court lacked the power to authorize late filing of the notice" where the time for filing without court approval had expired and no application for an

23

extension was made prior to the expiration of the statute of limitations); *Robinson v. Bd. of Educ.*, 104 A.D.3d 666, 666 (2d Dep't 2013) (holding that plaintiff's request to deem late notice timely "was made after the one-year-and-90-day statute of limitations had expired and, thus, the Supreme Court was without authority to grant such relief").

Section 217-a of the CPLR, which incorporates by reference GML §§50-e and 50-i, provides that an action against a municipality "shall not be commenced more than one year and ninety days after the cause of action therefor shall have accrued." N.Y. C.P.L.R. 217-a (Westlaw through L.2019 ch. 758 & L.2020 ch. 1 to 55, 58 to 88). Similar to GML § 50-i(1), failure to commence an action within the limitations period mandates dismissal of the action. *Galloway v. N.Y. City Police Dep't,* 7 A.D.3d 444, 445 (1st Dep't 2004); *Diggs-White v. City of N.Y.*, 306 A.D. 2d 371, 371 (2d Dep't 2003).

**B.    The Causes of Action of the Complaint Are Barred Because the Statute of Limitations Period on the Debtor's Fraud Claim Expired Well Before the Debtor's Bankruptcy Filing Date.**

The Complaint alleges that the Tax Assessments by the City of New York were improper because the City's valuation of the Property was "fraudulent." Complaint ¶¶38, 40, 51, 55-59. However, the alleged "fraudulent" valuation of the Property began when the Debtor took title to the Property in December 1986 (Complaint ¶¶5, 38, 40).

To the extent that the assessment of the Property was improper, the assessment took place in 1987, *i.e.*, the first time that the Debtor was assessed for taxes on the Property. As set forth above, the Debtor challenged the Tax Assessment made by the City of New York in 1993 based upon the assessed value of the Property. *See supra* Section II.B. Therefore, the Debtor knew of the alleged "fraudulent valuation" by no later than 1993. Giving the Debtor the benefit of the doubt, the Debtor discovered the alleged fraud by no later than the time that it brought a

challenge in 1993, and was required to bring no later than two years after that discovery in New York, or 1995, or four years from such date under Florida law, or 1997.

Finally, the Debtor's mechanical allegation that its claims are "exempt from notice requirements and any such statute of limitations under New York Law" (Complaint ¶¶60, 71) is wholly unsupported by law.

Moreover, the filing of the bankruptcy petition by the Debtor did not revive these otherwise statutorily time-barred actions. *In re GNK Enters., Inc.*, 197 B.R. 444, 448 (Bankr. S.D.N.Y. 1996) (debtor's adversary complaint for, among other things, breach of contract was dismissed where debtor filed bankruptcy petition after last day debtor could file action under relevant statute of limitations).

While section 108(a) of the Bankruptcy Code provides for certain statutes of limitations applicable to actions of the trustee or debtor-in-possession to be tolled during a bankruptcy case, it does not extend the limitations period where the debtor filed the petition after the relevant statute of limitations period has expired.

> If applicable nonbankruptcy law, **. . .** fixes a period within which the debtor may commence an action, ***and such period has not expired before the date of the filing of the petition***, the trustee may commence such action only before the later of- (1) the end of such period, **. . .** or (2) two years after the order for relief.

11 U.S.C. § 108(a) (emphasis added); *see also Aegis Healthcare, P.A. v. Shared Med. Sys. Corp.*, No. 3:99-CV-2697-X, 2000 WL 819409, at *2 (N.D. Tex. June 12, 2000) (holding that section 108(a) of the Bankruptcy Code does not suspend statutes of limitations); *In re Howe Grain, Inc.*, 176 B.R. 515, 519 (Bankr. D. Neb. 1994) ("If a statute of limitations expires before bankruptcy is filed, the trustee is not entitled to an extension of time under [section] 108(a).").

The Debtor's claim of "fraudulent valuation" accrued when the Debtor first received tax bills that, in the Debtor's opinion, did not reflect the Property's contaminated

condition.  The Complaint itself indicates that the placement on the State Registry in 1989 made the property unsuitable for leasing and subject to environmental remediation, so at the latest the Debtor was aware of contamination by then. Complaint par 16.  Therefore, the Complaint is untimely.  The Debtor filed bankruptcy on May 16, 2018, by which time the Statute of Limitations had already expired.  In addition, the Complaint was not filed until March 25, 2020[9].

The Complaint does not state that a notice of claim has been filed with the Comptroller of the City of New York, and there is no allegation in the Complaint that at least thirty days have elapsed since service of a notice of Claim on the City's Comptroller.  Therefore, the action must be dismissed.

Both causes of action must be dismissed for failure to file a notice of claim and for failure to timely commence the action.

With respect to the claim that the City's taxes are fraudulent, the Court has already determined in the Order Dismissing Prior Proceeding that the Debtor could not seek a redetermination of the taxes in Bankruptcy Court because the time to contest the assessment had expired under State and Local Law, pursuant to section 505 of the Bankruptcy Code.

Moreover, the Petition Date was May 16, 2018, over 20 years after the passage of any applicable statute of limitations for claims sounding in fraud.  As such, the Debtor's first cause of action is time-barred.  Further, because civil conspiracy is not an independent tort, an allegation of civil conspiracy will be dismissed as time-barred when the substantive tort underlying it is time-barred.  *Schlotthauer v. Sanders*, 153 A.D.2d 731, 732 (2d Dep't 1989).  Hence, the Debtor's

---

[9] While there have been some suspensions of Statutes of Limitation in New York due to the Covid-19 pandemic, the Debtor's time to bring the claim expired long before any such suspensions.

second cause of action is equally time-barred.  Accordingly, the Complaint should be dismissed in its entirety.

## **<u>CONCLUSION</u>**

For all of the reasons set forth above, the City respectfully requests that the Court enter an order (i) dismissing the Complaint with prejudice; and (ii) granting the City such other and further relief as the Court deems just and proper.

Dated:  May 21, 2020

WERNICK LAW PLLC
*/s/ Aaron A. Wernick*

Aaron A. Wernick, Esq.
Florida Bar Number: 14059
2255 Glades Road, Suite 324A
Boca Raton, Florida 33431
Telephone: (561) 961-0922
Facsimile: (561) 431-2474
E-mail: awernick@wernicklaw.com
Of Counsel to Furr Cohen, P.A.,
counsel for the City of New York
